IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLIFFORD D. CHAVEZ and RICK B. ROUGEMONT,

      Plaintiffs,

   vs.                                          No. CIV 97-1591 LH/DJS

McKINLEY PAPER COMPANY, a New Mexico Corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Plaintiff Clifford Chavez) (Docket No. 39), filed September 15, 1998; Defendant's Motion for Summary Judgment (Plaintiff Rick B. Rougemont) (Docket No. 43), filed September 15, 1998; Defendant's Motion for Summary Judgment on Plaintiffs' Racial Hostile Work Environment Claims (Count II Plaintiff's First Amended Complaint) (Docket No. 56), filed January 4, 1998; and Defendant's Motion for Summary Judgment on Plaintiff Rick Rougemont's Retaliatory Discharge Claim (Docket No. 60), filed January 4, 1999. The Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that Defendant's Chavez and Rougemont motions for summary judgment are well taken in part and will be **granted in part and denied in part** and that the motions for summary judgment on the Hostile Work Environment and Retaliatory Discharge claims are not well taken and will be **denied**.

## UNDISPUTED MATERIAL FACTS

Despite the Defendant's decision to create artificial distinctions between its various motions for summary judgment, and thereby avoid the page limitations imposed by this Court's local rules,[1] the undisputed material facts are essentially the same for all four of the instant motions. The parties agree that both Plaintiffs were employees at McKinley Paper Company, that Plaintiff Chavez was a member of the "blue" team and worked as a fork lift driver, and that Plaintiff Rougemont was a member of the "green" team. (*See* Def.'s Mem. Supp. Mot. Summ. J. (Rougemont) (hereinafter Def.'s Rougemont Mem.) at 1, 2 ¶ 1; Def. Mem. Supp. Mot. Summ. J. (Chavez) (hereinafter Def.'s Chavez Mem.) ¶ 3.) The parties also agree that both Plaintiffs signed job applications which included a statement indicating that the applicant understands that "employment with McKinley Paper Company is for no specific term and may be terminated by [either the employee or employer] with or with out notice or cause at any time" and that no company procedure or document creates an employment contract or otherwise modifies the "at-will" employment relationship. (*See* Def.'s Rougemont Mem. at 2, ¶ A(1); Def.'s Chavez Mem. ¶ 7; Pl. Rougemont's Resp. at 2; Pl. Chavez's Resp. at 1.) Plaintiff Rougemont does insist that he was unaware of the meaning of legal terms such as "contract," "breach," and "at-will," however, Defendant properly observes that Mr. Rougemont stated in his deposition that no one ever told him or gave him anything which lead him to believe that

---

[1] These efforts by parties to avoid the limitations intentionally imposed by the Court do not go unnoticed. The Court cautions counsel to seek extensions when they feel they are unable to fully discuss the merits of their motion within the confines imposed by Local Rule. *See* D.N.M.LR-Civ. 7.7. The filing of multiple, closely related motions is particularly egregious where, as here, multiple parties are represented by the same counsel. Filing duplicative and unduly repetitive motions only serves to unnecessarily burden the Court—a result upon which the Court does not look favorably.

he had an employment contract. (*See* Pl. Rougemont's Resp. at 2; Def.'s Rougemont Mem. at 3, ¶ A(3).)

The parties do have vigorous disputes over the nature, accuracy, and effect of the existing evidence relating to Plaintiffs' claims for race discrimination and retaliation. The Defendant offers significant evidence that both of the Plaintiffs were dismissed for various unsafe or inappropriate conduct. (*See generally* Def.'s Rougemont Mem. at 2-4; Def.'s Chavez Mem. at 2-5.) On the other hand, the Plaintiffs point to evidence that there was an atmosphere of racial animus and that they were dismissed, not on account of their work habits, but because of their ethnicity. (*See generally* Pl. Rougemont's Resp. 3-4; Pl. Chavez's Resp. 2-3; Pl. Rougemont's Resp. Mot. Summ. J. (Hostile Environment) (hereinafter Pl. Rougemont's Hostile Env't Resp.) at 1-3; Pl. Rougemont's Resp. Mot. Summ. J. Retaliatory Discharge Claim (hereinafter Pl.'s Retaliatory Discharge Resp.) at 3-7.) Moreover, they assert that up until their dismissals, they had received positive evaluations which did not address the problems represented as the reason for their dismissals. (*Id.*) The parties similarly dispute the facts related to Plaintiff Rougemont's state law claim for Retaliation in Count III of the First Amended Complaint. (*See generally* Def. Mem. Supp. Mot. Summ. J. Retaliatory Discharge Claim; Pl.'s Retaliatory Discharge Resp.)

### PLAINTIFF'S CLAIMS FOR BREACH OF EMPLOYMENT CONTRACT

Defendant argues in its two primary motions for summary judgment that Plaintiffs' claims for breach of implied employment contract in Count I of the First Amended Complaint must fail as the undisputed material facts establish that no implied contract could have existed. Specifically, Defendant points to both Plaintiffs' application forms which state in part that the applicant "understand[s] that [his] employment with the Employer is for no specific term and may be terminated

by . . . the Employer *with or without notice or cause at any time*." (*See* Def.'s Rougemont Mem. at 2, Ex. A (emphasis added); Def.'s Chavez Mem. at ¶ 7, Ex. B (emphasis added).) The Defendant also notes that the application included a statement that the applicant understood that "no oral promise, McKinley Company policy, custom, business practice, or other procedure (including McKinley's Personnel handbook or any personnel manuals) constitutes an employment contract or modification of the at-will employment relationship between [the applicant] and the Employer." (*See Id.*)

Moreover, the Defendant observes that the personnel manual itself—the very document Plaintiffs assert created the implied contract—states that its contents "are not intended nor should they be interpreted to establish a contractual relationship with any employees, or induce reliance thereon." (*See* Def.'s Rougemont's Mem. at ¶ A(2), Ex. B; Def.'s Chavez Mem. ¶ 8, Ex. E). The manual unequivocally states that the "employment relationship with McKinley is *at will*" and further explains that "[t]his means that either party may end the relationship *at any time, with or without notice* as prescribed by McKinley Paper Company's Policy on termination." (*Id*. (emphasis added).) Finally, Defendant points to Plaintiff Rougemont's statement that no one gave him anything or said anything which let him to believe that he had an employment contract. (*See* Def.'s Rougemont Mem. ¶ A(3).)

The Plaintiffs add their own undisputed facts, noting that both Plaintiffs were placed on a "probationary" period for their first ninety days of employment and then were told they were considered "permanent." (*See* Chavez Resp. at ¶ 6; Rougemont Resp. ¶ 9.) They also point to the involuntary termination section of the employee handbook and its description of procedures which may be instituted in response to an employee's "unsatisfactory performance." (*See e.g.* Pl. Chavez's

Resp. Ex. 10 at 5-2.) Additionally, Mr. Rougemont asserts that he did not understand the meaning of either the employment application disclaimer language or the employee handbook disclaimer that the Defendant has highlighted and that he was unaware of the meaning of the term "at-will." (*See* Rougemont Resp. ¶ 1-2.) Plaintiffs argue that given these additional facts, at a minimum summary judgment cannot be granted in favor of the Defendant on Count I, and assert that the undisputed facts actually establish that an implied contract did exist and that it was breached by the Defendant.

As the parties point out, the New Mexico courts have consistently held that "the general rule in New Mexico is that an employment contact is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). "An at-will employment relationship can, [of course,] be terminated by either party at any time for any reason or no reason, without liability." *Id*. The New Mexico courts have recognized that an at-will relationship may be modified by an implied employment contract arising out of direct or indirect references by an employer that "termination would be only for just cause or [where the employer] has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct or procedures for employees to air grievances." *Id*. (citations omitted). Personnel manuals have been recognized as creating such an implied contract, altering an at will employment relationship to a contractually based relationship, as alleged here. *See e.g. Lukoski v. Sandia Indian Management Co.*, 106 N.M. 664, 666-67, 748 P.2d 507, 509-10 (1988).

The analysis of the undisputed facts in this matter, require the Court to "consider the totality of the parties' relationship, circumstances, and objectives in determining whether the presumption of

at-will employment has been rebutted." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 784. While the Plaintiffs rely on vague references to their "probationary" and "permanent" status—which under other circumstances might be important—the critical factor in the instant totality analysis is the disclaimers contained in the job applications and personnel manual. "Personnel manuals containing such statement[s] *do not* create an implied contract altering the parties' 'at will' relationship." *Paca v. K-Mart Corp.*, 108 N.M. 479, 481, 775 P.2d 245, 247 (1989) (emphasis added) (citing *Lukoski*, 106 N.M. at 666-67, 748 P.2d at 509-10 (1988)); *see also Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 714, 917 P.2d 1382, 1383 (1996) (holding no implied contract created given "express reservation of the right to terminate an employee for any reason"). "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger*, 115 N.M. at 672, 857 P.3d at 783.

In this instance, the disclaimers contained in the application and the personnel manual make it extremely clear that the Defendant employer was expressly reserving the right to remove employees without cause. Notwithstanding Plaintiff Rougemont's claim that he did not understand such terms as "at will," the test is whether the Defendant has created a reasonable expectation that an implied employment contract exists. The application plainly states that employment with McKinley Paper "is for no specific term and may be terminated by me or the Employer *with or without notice or cause at any time*." (*See e.g.* Def.'s Rougemont Mem. ¶ A(1), Ex. A.) Likewise, the handbook states that it is "not intended . . . to establish a contractual relationship with any employees . . . [and that either the employee or employer] may end the relationship *at any time with or without notice* as prescribed

by McKinley Paper Company's policy on termination."[2] (*See e.g.* Def.'s Rougemont Mem. ¶ A(2), Ex. C.) A personnel manual containing such explicit disclaimers cannot be said to "encourage reliance" on any procedure contained within it. *Cf. Lukoski*, 106 N.M. at 667, 748 P.2d at 510.

It is true that there is some discussion by both Plaintiffs that they were told that after they completed a "probationary period" they became "permanent" employees. Additionally, the employee handbook indicates that probationary employees may be terminated "without applying any problem solving procedures outlined in [the] handbook." (*See* Pl. Rougemont's Resp. Ex. 10, at 5-2.) The handbook also indicates that employees *may* be terminated "in cases of unsatisfactory performance, cause, or reduction in force." (*Id.*) Moreover, the handbook sets out the possibility of notice and an opportunity to improve prior to termination for unsatisfactory performance. (*Id.*) The Plaintiffs also assert that the handbooks expression of a "'total corporate commitment' to creating and maintaining a culturally diverse environment free of racial harassment and discrimination" alters the at-will employment relationship and establishes a contractual right to be free of discrimination. (*See e.g.* Pl. Rougemont's Resp. at 10 (citing Ex. 10 at 2-1 to 2-2).)

The general statements endorsing diversity and rejecting bigotry clearly do not overcome the presumption of the at-will employment relationship, particularly when considered in light of the express reservation of the right to terminate employees without cause. (*See e.g.* Pl. Rougemont's Resp. Ex. 10, at 2-1, 2-2.) The New Mexico Courts long ago concluded that general policy statements of a non-promissory nature even when contained in an employee handbook are insufficient

---

[2] There is no indication in the record, or argument by counsel, that McKinley Paper Company's policy on termination "prescribes" anything other than the ability to end the employment relationship at any time for any reason. Nor is there any indication that the policy creates any substantive or procedural rights for employees prior to termination.

to create an implied contract. *See Sanchez v. The New Mexican*, 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987). Moreover, though of a more promissory nature, the handbook's statements regarding involuntary termination, cannot be viewed as creating an implied contract when considered in light of the handbook's express reservation of the at-will relationship. Rather, they merely indicate actions that might be taken in response to certain conduct. (*See e.g.* Pl. Rougemont's Resp. Ex. 10, at 5-2 (stating that "involuntary termination *may* be necessary in cases of unsatisfactory performance, cause or reduction in force" and that "termination for cause *may* be related to unsatisfactory performance").) Thus, these statements are more akin to the "list of 'actions leading to severe disciplinary action or discharge'" which the *Hartbarger* court concluded did not alter the at-will relationship. *See* 115 N.M. at 673, 857 P.2d 784.

The Defendant plainly took all reasonable measures to make clear to its employees that their employment was at-will, and that they could be terminated at any time, for any reason. A "written personnel policy cannot be said to have created any *reasonable expectation* of an implied contract" where there is an "express reservation of the right to terminate an employee for any reason." *Garrity*, 121 N.M. at 714, 917 P.2d at 1386 (emphasis added); *cf. Lukoski*, 106 N.M. at 666-67, 748 P.2d at 509-510 (holding that employee handbook modified at-will relationship in part because it declared that it was "establish[ing a] procedure regarding suspension of problem employees and termination for those who cannot conform to Company Policy").

This Court will not hold that general statements rejecting racial discrimination and promoting diversity as creating an implied contract. *See Steiber v. General Publishing Co.* 120 N.M. 270, 274, 901 P.2d 201, 205 (Ct. App. 1995) (holding that statements of an employers general approach to particular issue is insufficient to alter the at-will relationship) (citing *Vasey v. Martin Marietta Corp.*

29 F.3d 1460, 1465-66 (10th Cir. 1994)). Nor will the Court conclude that the handbook's description of McKinley's policy promoting resolution of performance problems alters the at-will employment relationship because that statement is accompanied by explicit reservations of the at-will relationship. *See Hartbarger*, 115 N.M. at 673, 857 P.2d 784; *Garrity*, 121 N.M. at 714, 917 P.2d at 1386. The Court must, therefore, conclude that the undisputed material facts establish that no implied contact existed. Summary judgment will be granted in favor of the Defendant on this issue and Count I of the Plaintiff's First Amended Complaint will be dismissed with prejudice.

**PLAINTIFF'S CLAIMS FOR DISCRIMINATION AND REPRISAL IN VIOLATION OF TITLE VII**

In Count II of Plaintiffs' First Amended Complaint, the Plaintiffs plainly claim that they suffered unlawful employment discrimination, were subjected to a hostile work environment,[3] and suffered reprisal because of their race and for their opposition of the alleged unlawful employment practices all in violation of Title VII. Defendant has moved for summary judgment in its favor on these claims in its Chavez, Rougemont, and Hostile Environment motions. To support their claims for race discrimination the Plaintiffs must first establish a *prima facie* case by showing that they were: (1) members of a protected class, (2) that they were terminated for allegedly violating a work rule, and that (3) and that similarly situated non-minority employees were treated differently. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997) (citations omitted)

> If the plaintiff establishes a *prima facie* case, the defendant must articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the discharge. If the defendant meets this burden, the plaintiff must then present evidence raising a

---

[3] Despite Defendant's unsupported allegation that the hostile work environment claim was somehow "waived" by the Plaintiff, it is plainly stated in paragraph 27 of the First Amended Complaint and the Court will not consider whether that claim was "waived" by the Plaintiff as no argument or evidence has been offered in support of this serious allegation. (*See* Def.'s Chavez Reply at 1; Def.'s Rougemont Reply at 1.)

> genuine issue that his termination was the result of his ancestry or that the reason offered by [the Defendant] was a mere pretext. At the summary judgment stage, if the plaintiff can show a *prima facie* case of discrimination and present evidence that the employer's proffered nondiscriminatory reason is a mere pretext, the case should go to the factfinder.

*Id.* (citations omitted).

Although the Defendants point to numerous depositions asserting legitimate non-discriminatory reasons for terminating the Messrs. Chavez and Rougemont, the Plaintiffs have successfully established disputes in material facts at each stage of this process. While the Plaintiffs rely primarily on their own deposition testimony to establish their *prima face* case, they also point to the deposition of Lucky Lasater, which appears to indicate that non-minority employees have been treated differently than the Plaintiffs. (*See generally* Pl. Chavez's Resp. Ex. 1.) The Plaintiffs point to numerous alleged incidents of racial harassment which create a dispute in facts at both the *prima facie* and pretext levels of analysis. (*See* Pl. Chavez's Resp. at 11-17; Pl. Rougemont's Resp. 12-17; Plaintiffs' Resp. Mot. Summ. J. Hostile Env't at 1-6.)

While the Plaintiff's evidence might be perceived as limited, the factual disputes it creates prevents the Court from granting summary judgment in favor of the Defendants on the claims for race discrimination and reprisal in violation of Title VII. These disputed facts similarly prevent the Court from considering the legal issues raised by the Defendant with regard to the hostile work environment claim made pursuant to Title VII. The Defendant simply cannot overcome the dispute in facts to establish that the harassment was not "pervasive or severe enough to alter the terms, conditions, or privilege of employment." *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citations omitted). While the Defendant has accurately described the difficult burden the Plaintiffs face in proving their Title VII claims for race discrimination, hostile work environment, and reprisal claims,

it has failed to overcome its own burden to establish on summary judgment that the material facts are undisputed. Therefore, the motions for summary judgment on the claims made in Count II will be denied.

**PLAINTIFF ROUGEMONT'S CLAIMS FOR REPRISAL, VIOLATION OF STATE PUBLIC POLICY**

Finally, Defendant seeks summary judgment on Plaintiff Rougemont's state law claim for retaliatory discharge or reprisal for filing a workers compensation claim which he makes in Count III of the First Amended Complaint. Defendant asserts that the undisputed facts establish that summary judgment should be entered in its favor and asks the Court to apply the federal *McDonnell Douglas* burden shifting analysis to its consideration the claim. While the Defendant attempts to gloss over the temporal relationship between the filing of the claim and Mr. Rougemont's dismissal a few days later, the Plaintiff highlights the close proximity of these two events and points to his own testimony that a manager had made statements and engaged in behavior which suggested an effort to have Plaintiff Rougemont fired in retaliation for filing his claim. (*See generally* Pl.'s Resp. Mot. Summ. J. Retaliation.) Again, while the Plaintiff's evidence is somewhat limited, he has established a sufficient dispute in facts to prevent the Court from granting summary judgment in favor of the Defendant on Count III.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment (Plaintiff Clifford Chavez) (Docket No. 39), filed September 15, 1998, and Defendant's Motion for Summary Judgment (Plaintiff Rick B. Rougemont) (Docket No. 43), filed September 15, 1998, are **granted in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' state law claims for breach of an implied contract contained in Count I of the First Amended Complaint are **dismissed with prejudice**.

-11-

**IT IS FURTHER ORDERED** that as the Court has found the material facts related to the Title VII claims are in dispute, the motions to grant summary judgment on Count II are **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Racial Hostile Work Environment Claims (Count II Plaintiff's First Amended Complaint) (Docket No. 56), filed January 4, 1998, is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff Rick Rougemont's Retaliatory Discharge Claim (Docket No. 60), filed January 4, 1999, is **denied**.

**IT IS FINALLY ORDERED** that the Hearing set in this matter for Thursday, February 18, 1999, at 9:00 a.m. is **vacated** and, as the matters set for that hearing have been resolved by this Memorandum Opinion and Order, will not be rescheduled.

_____
**UNITED STATES DISTRICT JUDGE**